IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

AMBER WHITLOCK                                                                              PLAINTIFF

VS.                            CASE NO. 4:08CV00243 JMM

ARKANSAS BLUE CROSS AND
BLUE SHIELD, ET AL.                                                                       DEFENDANTS

**ORDER**

Pending before the Court is defendants' Motion for Summary Judgment and plaintiff's response. For the reasons stated below, the Motion for Summary Judgment is granted (#29).

Plaintiff's complaint alleges violations of the First Amendment and the Americans with Disabilities Act ("ADA"), and brings a pendant state law claim for the tort of outrage.

Plaintiff contends that (1) she was denied her right to free speech; (2) she is disabled and was regarded as disabled based upon anxiety, depression, migraine headaches and Obsessive Compulsive Disorder ("OCD"); (3) she was subjected to "unwarranted" discipline resulting in her termination based upon her disability; (4) defendants denied her request for an accommodation; (5) she was subjected to hostile working conditions due to harassment by her co-workers and supervisor; and (6) her tort of outrage is based upon the conduct of her co-workers and supervisor.

Defendants argue that (1) plaintiff's First Amendment Claim fails as defendants are not state actors; (2) plaintiff's ADA harassment and failure to accommodate claims are time barred; (3) plaintiff has failed to exhaust her administrative remedies on the harassment claims;

(4) plaintiff has failed to establish a *prima facie* case of harassment or disparate treatment under the ADA; (5) plaintiff is not disabled under the ADA; (6) plaintiff's termination was not related to her alleged disabilities; (7) defendants had a legitimate non-discriminatory reasons for terminating plaintiff's employment and plaintiff cannot establish pretext; (8) plaintiff failed to request a reasonable accommodation; (9) plaintiff failed to state a claim of outrage; (10) defendants are entitled to judgment based upon the Doctrine of Estoppel; and (11) plaintiff's claims against Arkansas Blue Cross Blue Shield ("BC/BS") should be dismissed as she is not an employee of BC/BS.

I. *Facts*

BC/BS owns defendant Health Advantage and Baptist Medical System HMO. Health Advantage hired plaintiff to work as a claims specialist on June 15, 1998. Upon being hired, plaintiff went through orientation and had access to personnel policies including the employee handbook. Approximately one year after plaintiff was hired, she received a promotion. Plaintiff was terminated on December 13, 2006, based upon excessive tardiness.

Margaret Finger, supervisor for the Coordination of Benefits Department, was plaintiff's direct supervisor and, as such, performed plaintiff's annual reviews. Finger considered plaintiff's performance as substantially above average and, except for plaintiff's excessive tardiness, considered her to be a good employee consistently giving her outstanding evaluations.

Defendant Health Advantage maintains and enforces an attendance policy that clearly communicates its expectation as to its employees's attendance. The attendance policy requires employees to report to work punctually as scheduled and to work all scheduled hours and any required overtime. Unplanned time-off must be kept to a minimum and lost time must be made up during the week it is lost. The attendance policy also provides that unauthorized or excessive

tardiness will result in disciplinary action up to, and including termination.

Excessive tardiness is defined as being late to work and coming back late from breaks, or lunch, more than six times in any three month period. An employee may be terminated for tardiness after they have been cautioned for the need for improvement by a three step process.

First the supervisor will discuss the situation with the employee and attempt to find a mutually agreed solution to improve the employee's tardiness. If, after an appropriate period of time, the employee's tardiness does not sufficiently improve, the supervisor will again discuss the attendance expectations and document the discussion as the initial written warning. If there is still insufficient improvement, the employee will again be counseled and given a final written warning. If the conditions are not met as set out in the final written warning, the employee can be terminated immediately. Defendant Health Advantage also maintains an employee policy that prohibits harassment based upon an employee's disability.

Over the course of plaintiff's employment, plaintiff made numerous requests to Finger to change her work schedule. Finger granted all of plaintiff's requests. At no time did plaintiff request that her scheduled hours change on account of an impairment or alleged disability.

In April of 2006, Finger met with plaintiff and her co-workers to advise them that the attendance policy would be strictly enforced starting in May of 2006. This meant that six tardy violations within three months would result in discipline. Finger wanted to give all the employees sufficient time to make necessary arrangements to comply with the now strictly enforced policy.

On May 11, 2006, Finger met with plaintiff to discuss plaintiff's unauthorized attempts to make up time lost because plaintiff was late due to "two traffic accidents." Plaintiff was reminded of the enforcement of the attendance policy and that she already had been tardy on three occasions in the first ten days of the month.

On August 10, 2006, Finger again had a discussion with plaintiff concerning her attendance and unscheduled changes to her work schedule. The specific incident precipitating the meeting was plaintiff's working fewer than eight hours without discussing it with Finger or obtaining approval to work a short day.

Plaintiff explained that she had not worked a full day because she took an extra 30 minutes at lunch because her sister called "trying to get something started." She also stated that she only had one car, and had to get two children to daycare and two adults to work. Plaintiff told Finger that plaintiff believed that she should not have to adhere to a schedule, but should be able to work whenever it worked best for her as long as she worked a forty hour week.

Plaintiff complained of personal problems involving family issues resulting in Finger advising her to contact Health Advantage's Employee Assistance Program and Finger offering to change plaintiff's schedule if she thought it would help. Finger told plaintiff that plaintiff could come in early and stay late as she needed for the next two weeks. Plaintiff's response was that she could not work late as she had to pick up her children from daycare. Finger also informed plaintiff that she expected plaintiff to notify her if she changed her schedule again during the following two week period.

From May 1, 2006 until September 8, 2006, plaintiff was tardy over thirty times. These tardies did not include the times she returned late from break or lunch.

On September 8, 2006, plaintiff received a verbal warning in accordance with attendance policy for arriving late to work. On this September date, the warning period went into effect for ninety days.

On September 29, 2006, which was within the relevant 90-day period, plaintiff was late from returning from lunch. Finger did not issue plaintiff an initial written warning, but reminded her that

any further occurrences, no matter how many minutes late, would result in an initial written warning.

Plaintiff was late to work on Friday, October 6, 2006, and late from returning from lunch on October 9, 2006. As a result plaintiff received an initial written warning in accordance with the attendance policy.

On October 24, 2006, plaintiff came into work late, resulting in a final written warning. Plaintiff was explicitly advised that any further occurrences within the 90 day period would result in termination.

Plaintiff arrived late for work on December 13, 2006, due to car trouble. In accordance with the attendance policy, Health Advantage terminated plaintiff's employment. Plaintiff's medical conditions were never brought up when she was being disciplined for violating the attendance policy or at the time of her discharge.

Plaintiff admits that she received the above described disciplines and that she was in fact tardy on each occasion for which she received a discipline.

Plaintiff testified that co-employees Kim Hodges and Tina Robertson were tardy more than she, but that they did not receive disciplines because they were not disabled. Plaintiff's testimony regarding the number of times Hodges was tardy is based upon what other people told her.

Plaintiff does not know, and has offered no evidence, as to whether the instances she claims Hodges and Robertson were tardy were pre-approved; whether Hodges or Robertson exceeded their paid time off; whether they took leave without pay, or whether they made-up their lost time. Plaintiff admits that Melinda Cooper, a nondisabled employee, was terminated in October of 2006 for violation of defendants's attendance and tardiness policy.

Neither Hodges not Robertson had comparable attendance or tardy records to plaintiff's record, and Finger did not consider them to be in violation of defendants's tardiness policy.

Plaintiff alleged disability is based upon a 2002 diagnoses of OCD, anxiety, depression, and migraine headaches.  Plaintiff suffers from migraine headaches approximately two times a month and is currently not taking any preventative medication.  When she gets migraines she can get relief within an hour of taking prescribed medication.  Plaintiff was permitted to take leave pursuant to the Family Medical Leave Act whenever her migraines were too severe for her to continue working.

Plaintiff sometimes finds it difficult to make sure things that need to be done are completed, and she has anxiety about obsessing.  It is sometime hard for her to get her kids to brush their teeth or hair.  The major life activity she claims is impaired is anxiety.  The anxiety is triggered by the lack of order or untidiness, and she is anxious about people not liking her or that she is not doing something correctly.  Her anxiety, migraine headaches, depression, and OCD did not prevent her from doing her claims specialist work.

Plaintiff was able to perform daily living activities such as being a care giver to her children, preparing meals, and doing laundry.  Plaintiff testified that certain activities are sometimes difficult, e.g., leaving the house when things are not in order or finding her keys, and that her medication addresses her symptoms for the most part.

Plaintiff is friends with her former co-worker, Brandy Dillon.  Plaintiff no longer considers her former co-worker Hodges to be a friend because Hodges told plaintiff she was stupid to stay with her husband under the circumstances of his alleged drug use.

Plaintiff attended a New Year's Eve party with Dillon at Hodges' home on either December 31, 2004, or the previous year, December 31, 2003.  At the party plaintiff discussed personal matters with her co-workers including suspicions of her husband's alleged drug use and made remarks of a personal nature regarding her husband and a can of corn.

Plaintiff testified that there were two instances of alleged disability harassment each of which occurred sometime before December 31, 2005.

Plaintiff claims that over a three or four week period of time, her co-workers, Hodges and Dillon, moved items on plaintiff's desk, exchanged pictures between frames, moved her work around on her desk, and hid her staple remover, pens, white out, and tape dispenser.  Finger, did not move anything on plaintiff's desk or hide her supplies.

Hodges and Dillon subsequently confessed to plaintiff about their behavior and plaintiff reported the conduct to Finger.  Plaintiff testified that Finger said she had known about Hodges's and Dillon's actions.  Plaintiff testified that after reporting the conduct to Finger, it did not happen again.

The second incident occurred about six months to a year after the New Year's Eve party in 2003 or 2004, when two cans of corn appeared on plaintiff's desk.  Plaintiff claims that this was harassment because people would ask her about the cans of corn, and the explanation would embarrass her.  Plaintiff testified that only people who were at Hodges's New Year's Eve party would have known about her comments.

Plaintiff signed her Charge of Discrimination on September 3, 2007, and it was received by the EEOC on September 18, 2007.  Plaintiff claims in her charge that "[she] repeatedly requested reasonable accommodation for [her] disability in the form of flexible work hours" and that Health Advantage denied these requests and that she was discharged on December 13, 2006, because of her disability in violation of the ADA.

The EEOC issued a Notice of Rights to plaintiff on December 27, 2007.  Plaintiff filed her original complaint on March 26, 2008, and her amended complaint on August 19, 2008.  The amended complaint added a claim based upon violation of plaintiff's First Amendment rights. Plaintiff contends that her First Amendment rights were violated because she did not feel free to

7

complain about her treatment at work without ridicule.

On April 6, 2005, plaintiff filed a voluntary petition for Chapter 13 bankruptcy relief in the U.S. Bankruptcy Court for the Eastern District of Arkansas. Plaintiff failed to list this case as a claim and she failed to list the law suit on her Statement of Financial Affairs. She signed under penalty of perjury that the information on her bankruptcy forms was true and correct.

While plaintiff's Chapter 13 bankruptcy petition was pending, plaintiff signed her EEOC Charge of Discrimination, received her Notice of Right to Sue letter, and filed her complaint and amended complaint. Plaintiff did not amend her bankruptcy petition or schedules to include this lawsuit. The Bankruptcy Trustee filed the Chapter 13 final report and account on March 31, 2009, and plaintiff's bankruptcy case was closed on May 4, 2009.

II. *Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Seymour v. City of Des Moines*, 519 F.3d 790, 796 (8th Cir. 2008); Fed. R. Civ. P. 56. "A genuine issue of material fact exists if a reasonable jury could return a verdict for the party opposing the motion." *Chao v. Barbeque Ventures,* LLC, 547 F.3d 938, 941 (8th Cir.2008).

    A. *First Amendment*

"The First Amendment guarantee of free speech guards against abridgment through state action. It does not inhibit private restrictions on speech." *Wickersham v. City of Columbia,* 481 F.3d 591, 597 (8th Cir. 2007) (citing *Hudgens v. NLRB*, 424 U.S. 507, 513, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). Under certain "conditions the government may become so entangled in private conduct that 'the deed of an ostensibly private organization or individual is to be treated ... as if a State had caused it to be performed.'" *Id.* (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531

U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001).

It is undisputed that defendants are not state actors and plaintiff has presented no evidence that the government has become so entangled in the defendants's conduct that they should be considered state actors. Plaintiff's First Amendment claim is without merit.

B. *ADA Claims*

1. *Discrimination Claims*

"ADA . . . disability discrimination claims are analyzed under the well-known *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Burchett v. Target Corp*., 340 F.3d 510, 516 (8th Cir. 2003). The employee bears the initial burden of proving a *prima facie* case of discrimination. *McDonnell Douglas Corp*., 411 U.S. at 802, 93 S.Ct. 1817. The employer then has the burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. at 802-03, 93 S.Ct. 1817. Finally, to prevail, plaintiff must show that the defendant's proffered reason was a pretext for discrimination. *Id*. at 804, 93 S.Ct. 1817." *Dovenmuehler v. St. Cloud Hosp*., 509 F.3d 435, 439 (8th Cir. 2007).

"In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate 'that (1) [s]he is disabled within the meaning of the ADA; (2) [s]he is qualified to perform the essential functions of h[er] job with or without reasonable accommodation; and (3) [s]he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination based on disability.'" *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682 (8th Cir. 2003) (quoting *Dropinski v. Douglas County, Neb*., 298 F.3d 704, 706-07 (8th Cir. 2002));

"With respect to the first element of the *prima facie* case, the ADA defines disability in the following three ways: "(A) a physical or mental impairment that substantially limits one or more of

9

the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)*." Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 989 (8th Cir. 2007).

"An inference of discrimination arises where there is some evidence of a causal connection between a plaintiff's disability and the adverse employment action taken against the plaintiff." *Allen v. Interior Constr. Servs.*, 214 F.3d 978, 982 (8th Cir. 2000).

It is undisputed that plaintiff was qualified to carry out the essential functions of her position. However, she has failed to establish that she was disabled. "Under the [Americans with Disabilities Act], disability means 'a physical or mental impairment that substantially limits one or more of [an individual's] major life activities.' " *Liljedahl v. Ryder Student Transp. Servs., Inc.*, 341 F.3d 836, 841 n. 3 (8th Cir. 2003) (quoting 42 U.S.C. § 12102(2)).

Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I) (2006). A "substantial limitation" is an inability or significant restriction on the ability to perform a major life activity that the average person in the general population can perform. *See Nuzum v. Ozark Auto. Distribs., Inc.*, 432 F.3d 839, 846-48 (8th Cir. 2005).

Plaintiff's testimony is that her anxiety is triggered by the lack of disorder or untidiness, or if people do not like her. She also testified that on occasions, she could not leave her house in the mornings until things were tidy and that she sometimes misplaced her keys. Plaintiff testified that her medication controlled her migraine headaches. Plaintiff has failed to establish with this testimony that she is disabled as defined by the ADA.

Likewise there are no facts in the record to establish that defendants mistakenly believed that plaintiff's migraine headaches, anxiety, depression, and OCD substantially limited plaintiff's ability

to work. *See Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 989 (8th Cir. 2007) (internal citations omitted). ( "In order to be regarded as disabled ... the employer must mistakenly believe that the employee has an impairment or believe employee has actual impairment which substantially limits the employee's ability to work.").

Assuming, however, that plaintiff had met her burden with respect to the first two elements of a *prima facie* case, plaintiff's case fails as defendants' actions do not support an inference of discrimination.

There is no evidence other than plaintiff's unsupported conclusory allegations that defendants's decision to strictly enforce their attendance policy was in any way related to plaintiff''s disability. In addition plaintiff admits that she does not remember if the circumstances which led to her receiving the written warning regarding her tardiness was related to her alleged disability, and that she was tardy due to car trouble and not her alleged disability on the day she was terminated.

2. *Failure to accommodate*

> When a party makes a reasonable accommodation claim, [courts] apply a modified burden-shifting analysis. *E.g.*, *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir.1995); *see also Dropinski v. Douglas County*, 298 F.3d 704, 707-08 (8th Cir.2002); *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 948-53 (8th Cir.1999); *Montgomery v. John Deere & Co.*, 169 F.3d 556, 562-63 (8th Cir.1999) (Lay, J., concurring) (noting that McDonnell Douglas should not apply in an ADA reasonable accommodation claim); *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1219-20 (8th Cir.1999) (Lay, J., dissenting) (same); *cf. Mason v. Frank*, 32 F.3d 315, 318-19 (8th Cir.1994) (applying the same analysis under the Rehabilitation Act of 1973). Under *Benson*, a plaintiff "at all times retains the burden of persuading the trier of fact that he has been the victim of illegal discrimination due to his disability." 62 F.3d at 1112 (citations omitted).

*Fenny v. Dakota, Minnesota & Eastern R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003).

Plaintiff's reasonable accommodation claim fails because she has not only failed to provide sufficient evidence that she was disabled, but she has failed to present any evidence that she

11

requested any accommodation based upon her alleged disability. The record reflects that her requests for accommodations were based upon family and car problems.

To the extent that plaintiff is contending that she was regarded as disabled, her accommodation claim fails as "an employee who is regarded as disabled in not entitled to a reasonable accommodation." *Finan v. Good Earth Tools, Inc.*, 565 F.3d 1076, 1080 (8th Cir. 2009).

### 3. *Pretext*

Even if plaintiff had established a *prima facie* case of discrimination, defendants have stated a legitimate nondiscriminatory reason for their actions. Plaintiff was terminated based upon repeated violations of defendants's Attendance and Tardiness Policy.

Plaintiff has failed to establish that this legitimate nondiscriminatory reason was a pretext for discrimination. Plaintiff's allegations that employees who were not disabled were treated differently is not supported by her own testimony. Plaintiff admits that neither Hodges nor Robertson had comparable attendance or tardy records and that Cooper, a nondisabled employee, was terminated in October of 2006 for violation of the Attendance and Tardiness Policy.

### 4. *Harassment Claims*

Plaintiff alleges co-workers rearranged items on her desk and hid her work from her for the purpose of causing her anxiety and emotional distress, and that she was "subject to hostile working conditions as a result of the actions of her co-workers and her supervisor." She additionally claims that the placing of the two cans of corn on her desk by someone was harassment.

These ADA harassment claims are time barred as she did not file an EEOC charge of harassment within the required 180 days of the alleged harassment occurrences. *See* 42 U.S.C. § § 2000e-5 and 12117(a). Moreover, plaintiff failed to exhaust her administrative remedies on these claims as she failed to include any allegation of harassment in the EEOC charge that she did file, and

her harassment claims are not reasonably related to the claims contained in that charge. *See Kells v. Sinclair Buick-GMC Truck, Inc*., 210 F.3d 827, 836 (8th Cir. 2000) (harassment claim not reasonably related to claims of discriminatory demotion and constructive termination for purposes of exhaustion of administrative remedies).

    C.  *Tort of Outrage*

In *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980), the Arkansas Supreme Court first recognized the tort of outrage or intentional infliction of emotional distress and defined it as extreme and outrageous conduct, meaning conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."

Plaintiff's outrage claim is without merit.

> "In the employment context, an at-will employee cannot predicate a claim of outrage on the mere fact that she was discharged, *see City of Green Forest v. Morse*, 316 Ark. 540, 873 S.W.2d 155, 156 (1994); rather, the employer must have discharged her in a manner which breached its duty to refrain from conduct that is so extreme and outrageous as to go beyond all possible bounds of decency and to be utterly intolerable in a civilized society, *see Unicare Homes, Inc. v. Gribble*, 63 Ark. App. 241, 977 S.W.2d 490 (Ark.Ct.App.1998)."

*Curd v. Hank's Discount Fine Furniture*, *Inc.*, 272 F.3d 1039, 1042 (8th Cir. 2001).

The conduct underlying plaintiff's claim of outrage, e.g., co-employees rearranging her work materials, her supervisor's knowledge of her co-workers actions, and someone leaving cans of corn on her desk, is not so outrageous or extreme that it goes beyond all possible bounds of decency or can it be "regarded as atrocious, and utterly intolerable in a civilized society." *M.B.M. Co. v. Counce*, 268 Ark. at 280, 596 S.W.2d at 687.

D. *Estoppel and the Claims against Blue Cross/Blue Shield*

Because the Court has held that Plaintiff's First Amendment, ADA, and outrage claims fail, there is no need to address defendants' reliance on judicial estoppel or the issue of whether plaintiff was an employee of BC/BS.

III. *Conclusion*

Plaintiff's claims are dismissed with prejudice. Judgment will be entered accordingly.

IS SO ORDERED THIS __9__ day of October , 2009.


_____
James M. Moody
United States District Judge